**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TERREL J. TATE, #462999,

    Petitioner,

                                       Civil No: 06-CV-15399
                                       Honorable Arthur J. Tarnow
                                       Magistrate Judge Mona K. Majzoub

CINDI CURTIN,

    Respondent.
_____/

**OPINION AND ORDER DENYING HABEAS PETITION, AND
DENYING A CERTIFICATE OF APPEALABILITY AND GRANTING
LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

      Terrel J. Tate, ("Petitioner"), presently confined at Oaks Correctional Facility in Manistee, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, in which he challenges his conviction for possession with intent to deliver 50 - 224 grams of cocaine, M.C.L.A. §333.7401(2)(a)(3); and possession of marijuana, M.C.L.A. 333.7403(2)(d). He was sentenced to 10 - 20 years on the cocaine possession conviction and 20 days on the marijuana conviction. Petitioner contends that the prosecutor violated his constitutional rights by eliciting evidence of Petitioner's post-*Miranda*[1] silence and his request for an attorney during his custodial interrogation. Petitioner further claims that his trial counsel was ineffective because he opened the door to the inadmissible evidence elicited by the prosecution due to statements defense counsel made during his opening argument. For the reasons that follow, the petition is denied.

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

## I. BACKGROUND

Petitioner's conviction arises from an observation by law enforcement officials of Petitioner standing in front of a brown truck at 2:40 am on January 5, 2003 on Westmoreland street in Genesee County. Petitioner was reported as looking suspicious. The police officers shined their headlights on him and noticed a brown paper bag in his pocket. The police ordered Petitioner to raise his hands and when he refused, the officers drew their weapons and again ordered Petitioner to show his hands. Petitioner complied with their directive and when he did so, the brown paper bag fell from his pocket. The bag contained 121.4 grams of white powder, which was later tested and found to be cocaine. Also in the bag were two digital scales. Upon securing Petitioner and subjecting him to a pat-down search, a box of baking soda fell from his jacket and he also had a small bag of marijuana on his person.

Petitioner challenged his conviction in state court based upon the issues raised in his habeas petition.[2] Respondent filed an answer on the merits asserting that habeas relief

---

[2] *See People v. Tate,* No. 256434 (Mich. Ct. App. Dec. 21, 2004) (denying Petitioner's application for leave to appeal); *People v. Tate,* 474 Mich. 1024; 708 NW2d 397 (2006) (table) (denying Petitioner's application for leave to appeal to the Michigan Supreme Court).

is not warranted.[3] After filing his habeas petition, Petitioner completed his sentence and was discharged from the Michigan correctional system on August 19, 2009. [4]

## II. STANDARD

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

---

[3]The blanket assertion of "any and all available defenses" by Respondent without argument need not be addressed.

[4]Petitioner's discharge from custody does not render his petition moot because continuing collateral consequences attach to wrongful criminal convictions. *See Gentry v. Deuth*, 456 F.3d 687, 693-95 (6th Cir. 2006).

*Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. DISCUSSION

### A. Post-Arrest Silence

Petitioner contends that the prosecutor violated his constitutional rights by eliciting evidence from Sergeant Shawn Ellis about Petitioner's post-*Miranda* silence and his request for an attorney. During defense counsel's opening statement at trial, he said the following:

> And in our case the non-evidence is just as important as the alleged evidence.
>
> No fingerprints on any of the items; not on any of the evidence. You're gonna see the scales; lots of flat edges. You're gonna hear testimony how when Terrel Tate was arrested he's reaching in with his hand to hide a bag allegedly with no gloves on, but no prints come off the bag, no prints on the two scales. With all this cocaine residue on 'em, no prints can be lifted from those flat-edged scales. No residue on the box – or no fingerprints on the box of baking soda. Again, a flat-edge box of baking soda. And no fingerprints on any of the packaging material that packaged this huge amount of cocaine.
>
> No large amount of cash found on the defendant. You're gonna hear an omission about cash, but the one thing that they're gonna testify to, no large amounts of money, all indicative of a huge drug dealer. Again, here's a guy with $15,000.00 worth of possible cocaine and he doesn't have any money on him. He doesn't have any money on him. He doesn't have any pager, no cellphones, no guns. All the indications of a huge drug dealer; gotta keep in contact with your suppliers. Where's your cellphone? Where's your pager? Where's your money? There isn't any.
>
> Again, no Intel, no reputation. FANG'S not gonna bring an officer up here to say, "We've been investigatin' Terrel Tate for years and he's one of the biggest narcotic dealers in the Flint area." Not gonna hear anything like that.

> No statements of guilt by the defendant. All he ever said was, "Give me an attorney. I didn't do this. Give me an attorney. I didn't do this."

Tr. Vol. I, 6/24/03, pp. 108-110.

After defense counsel's opening statement and prior to the prosecutor calling her first witness, the prosecutor addressed the trial court as follows:

> The Court: Thank you. Anything for the record before we recess, Ms. McLaren?
>
> Ms. McLaren: Yes, Judge. Normally obviously for the reason is because I don't want [an] appellate issue, I never get into the defendant's statement. He gave a statement invoking his right to an attorney. However, in opening, Mr. Thrall indicated that he said, "Get me an attorney. I didn't do this." That's not an accurate statement of what the defendant said. He merely indicated he wanted an attorney. He never said, "I did not do this." So I'm bringing a motion *in limine* at this time, your Honor. I will be asking Shawn Ellis that question for the limited purpose, because he[ ] opened the door to this now, if whether or not when the defendant invoked his right to an attorney he said, "I didn't do this."
>
> Mr. Thrall: That's fair, Your Honor.
>
> The Court: All right. So we all know. . .

*Id.* at 113. When the time came for Sergeant Ellis' direct examination, the prosecutor questioned him as follows:

> Q: At the time you interviewed him did you me–read him his *Miranda* rights?
>
> A: Yes.
>
> Q: And did he ask for an attorney?
>
> A: Yes, he did.
>
> Q: Now, you heard in the – ah --
>
> Mr. Thrall: Your Honor, at this time I know what Ms. McLaren is going to raise. I'm going to object. There will be a cautionary instruction given to the jury that anything I may have said to the jury during opening is not evidence and that the only

evidence is that which is elicited from that seat right there. I may have made an inadvertent statement in — in my –

The Court: What is your objection?

Mr. Thrall: My objection is to the fact that she is going to ask--

The Court: What is the legal basis for your objection?

Mr. Thrall: Okay. Relevance.

The Court: I don't want to hear argument. I just want to hear your legal basis for your objection.

Mr. Thrall: Relevance and hearsay.

The Court: All right. It's overruled. The issue was raised by your statement in opening statement. You may proceed.

Ms. McLaren: Thank you, Judge

Q: You heard defense counsel in opening statement say that the defendant said, "I didn't do it. I wanna an attorney," correct?

A: Yes.

Q: Did the defendant say that?

A: No.

Q: Did he ever say he did not do it?

A: No.

Q: Thank you . . .

Tr. Vol. II, 6/254/03, pp. 251-52.

Petitioner asserts that he is entitled to habeas relief because the admission of evidence regarding his post-arrest silence denied him a fair trial. The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The United States Supreme Court has stated that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37 (1966). Consistent with *Miranda*, prosecutors may not comment on a defendant's post-arrest silence in their case in chief, on cross-examination, or in closing arguments. *See Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976); *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002).

Petitioner's primary claim is that the prosecutor elicited evidence of Petitioner's post-*Miranda* silence when Sergeant Ellis testified that Petitioner did not make claims of innocence during his custodial interrogation and that he requested an attorney. Sergeant Ellis' testimony disputed defense counsel's representation that Petitioner asserted his innocence during his custodial interrogation.

Moreover, a single mention of a criminal defendant's post-arrest silence does not violate the defendant's due process rights when the prosecution does not specifically and expressly attempt to use the silence to impeach the defendant. *See U.S. v. Stubbs,* 944 F.2d 828, 835 (11th Cir. 1991). Here, the prosecution's only purpose in broaching the subject of Petitioner's custodial interrogation was to challenge defense counsel's representation

to the jury that Petitioner made protestations of his innocence during his custodial interrogation. Petitioner raised the issue first; the prosecutor sought permission from the Court to challenge those statements with Sergeant Ellis' testimony; and defense counsel agreed.

The Supreme Court's holding in *Doyle* "has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the *Miranda* warnings." *United States v. Crowder,* 719 F. 2d 166, 172 (6th Cir. 1983). Although the prosecutor elicited the testimony from Sergeant Ellis, these comments did not violate Petitioner's due process rights because they were made in the context of a response to trial counsel's opening statement regarding Petitioner's arrest and were not used to impeach Petitioner's credibility. *See Noland v. French,* 134 F. 3d 208, 216 (4th Cir. 1998). Because the prosecutor made no specific inquiry about Petitioner's post-arrest silence and did not mentioned it again during trial , there was no *Doyle* violation. *Stubbs,* 944 F. 2d at 835.

Moreover, assuming that Sergeant Ellis' testimony was an improper reference to Petitioner's post-arrest silence, any such error was harmless in light of the overwhelming evidence against Petitioner (i.e., Petitioner was found in possession on his person of the cocaine, marijuana, digital scales, and baking soda by the police). Where a state court finds no error, as was the case here, the proper harmless error standard for a federal habeas court is to determine whether an error had a "substantial and injurious effect on the jury's verdict." *See Eddleman v. McKee,* 471 F. 3d 576, 583, n. 3, 585 (6th Cir.

2006)(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A violation of *Doyle* can be harmless error. *See Hayton v. Egeler,* 555 F. 2d 599, 603-04 (6th Cir. 1977). In light of the strong evidence against Petitioner in this case, any reference by Sergeant Ellis to his post-arrest silence was harmless error at best, in that it did not have a substantial or injurious effect on the jury's verdict. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Ineffective Assistance of Counsel

The Court will likewise reject Petitioner's related ineffective assistance of counsel claim. Petitioner claims that his trial attorney was ineffective because it was his opening statement which opened the door for the prosecutor to engage in her line of questioning with Sergeant Ellis.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

It is apparent from reading the defense counsel's opening statement, *supra,* that he was attempting to show that Petitioner could not have been this big drug dealer because of the lack of certain things not found on his person when he was arrested (i.e., cash, cell phones, pager, weapon, etc). Petitioner's alleged statements of being innocent and requesting an attorney so that he could challenge these charges further embellishes Petitioner's defense, which would signify a strategical purpose in making those representations during defense counsel's opening statement . Therefore, the Court does

not find that defense counsel was ineffective for making those remarks during opening statement.

Even if they were improper, the second prong of *Strickland* was not satisfied. That is, there was insufficient prejudice.

### C. Admissibility of Crack Cocaine Evidence

Petitioner asserts the trial court erred when it permitted testimony from a prosecution witness, a senior lab analyst with the Michigan State Police Department, about the manufacture of crack cocaine. Petitioner was found with a box of baking soda on his person. The prosecution sought to show the jury why Petitioner would have a box baking soda on his person when he also had in his possession powder cocaine. Sheila Smith testified about how powder cocaine can be transformed into crack cocaine through the use of baking soda. Tr. Vol. I, 6/24/03, pg. 233. Defense counsel objected to Officer Smith's testimony arguing that testimony about crack cocaine was irrelevant when Petitioner was found with powder cocaine. However, the trial court overruled the objection. The prosecution explained that it was relevant testimony in light of the fact that Petitioner was found with a box of baking soda on his person and how that agent can be used to convert powder cocaine into crack cocaine.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.

> [A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no affect on [a court's ] review of the

11

constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution.

*Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir. 1993). "[E]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett,* 169 F.3d at 1163; see also *Coleman v. Mitchell,* 244F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle,* 463 U.S. 880, 899 (1983).

Petitioner has failed to demonstrate that the admission of Sheila Smith's testimony impinged upon his constitutional rights. Therefore, habeas relief is not warranted on this claim.

### D. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal

*Tate v. Curtin,*
Case No: 06-CV-15399

district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. The court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

Finally, the Court concludes that although a certificate of appealability is denied, it will grant leave to proceed on appeal *in forma pauperis.* See Fed. R. App. P. 24(a).

## IV. Conclusion

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

*Tate v. Curtin,*
Case No: 06-CV-15399

IT IS FURTHER ORDERED that Petitioner will **GRANT** leave to appeal *in forma pauperis.*

        S/Arthur J. Tarnow
        <u>Arthur J. Tarnow</u>
        United States District Judge

Dated: March 22, 2010

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 22, 2010, by electronic and/or ordinary mail.

        S/Catherine A. Pickles
        <u>Judicial Secretary</u>